552 A.2d 881

Patrick McCULLOUGH

v.

Michael WITTNER.

No. 32, Sept. Term, 1987.

Court of Appeals of Maryland.

Feb. 6, 1989.

Sandra Z. Berenson and Lawrence B. Coshnear, Baltimore, for appellant.

Dennis M. Sweeney, Deputy Atty. Gen. (J. Joseph Curran, Attorney General, Richard M. Kastendieck and C.J. Messerschmidt, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and JAMES F. COUCH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) specially assigned.

ELDRIDGE, Judge.

The Inmate Grievance Commission was created in 1971 as a separate agency within the Department of Public Safety and Correctional Services. *See* Ch. 210 of Acts of 1971, now codified in Maryland Code (1957, 1986 Repl.Vol., 1988 Cum.Supp.), Art. 41, § 4–102.1. Under the statutory provisions establishing the Commission, "any person confined to an institution within the Division of Correction, or otherwise in the custody of the Commissioner of Correction, or confined to the Patuxent Institution" is entitled to submit to the Commission "any grievance or complaint against any officials or employees of the Division of Correction or the Patuxent Institution." § 4–102.1(d).

The statute goes on to require that the Inmate Grievance Commission provide a hearing for any grievance or complaint which is not wholly lacking in merit. § 4–102.1(f). The Commission must then issue an order "which shall include a statement of the findings of fact, the Commission's conclusions and its disposition of the complaint." *Ibid.* The Commission's final order, other than an order dismissing the complaint, is subject to review by the Secretary of Public Safety and Correctional Services. Finally, the Act specifies: "No court shall entertain an inmate's grievance or complaint within the jurisdiction of the Inmate Grievance Commission unless and until the complainant has exhausted the remedies as provided in this section." § 4–102.1(*l*). With regard to the Commission, *see generally*

*Collins v. Foster,* 302 Md. 328, 487 A.2d 1189 (1985); *Holsey v. Inmate Griev. Comm'n,* 296 Md. 601, 464 A.2d 1017 (1983); *State v. McCray,* 267 Md. 111, 142–144, 297 A.2d 265 (1972); *Hewitt v. Dept. of Pub. Safe. and Correct.,* 38 Md.App. 710, 382 A.2d 903 (1978); *Bryant v. Dep't of Public Safety,* 33 Md.App. 357, 365 A.2d 764 (1976); *McCargo v. Mister,* 462 F.Supp. 813 (D.Md.1978); Comment, *Maryland Inmate Grievance Commission,* 35 Md.L.Rev. 458 (1976).

Turning to the case before us, Patrick McCullough, an inmate at the Maryland Correctional Institution in Jessup, brought a common law tort action against Michael Wittner in the Circuit Court for Anne Arundel County, seeking compensatory and punitive damages. McCullough alleged that, while in his cell at the Institution, he was repeatedly struck by Wittner, a correctional officer at the Institution. McCullough further alleged that the assault and battery caused his head to bleed, requiring medical treatment at the Institution and at the Maryland House of Correction. McCullough claimed that Wittner acted maliciously, and that the malicious conduct resulted in McCullough's experiencing dizzy spells and further loss of hearing,[1] as well as suffering injuries to his middle ear, right wrist, left eye, and head. Finally, McCullough stated that the assault and battery "was done without any provocation on the part of the plaintiff." The circuit court granted Wittner's motion to dismiss on the ground that, because McCullough had not filed a grievance with the Inmate Grievance Commission, he had failed to invoke and exhaust his administrative remedies. Thereafter, McCullough appealed to the Court of Special Appeals. While the case was pending in that court, we issued a writ of certiorari.

 The question before this Court is whether a Maryland prison inmate, seeking monetary damages for personal injuries resulting from a correctional officer's alleged tor-

---

1. McCullough stated that he previously had been afflicted with some loss of hearing.

tious conduct, which occurs in one of the institutions covered by the Inmate Grievance Commission statute, must file a complaint with and exhaust his remedies before the Commission prior to bringing a common law tort action. We hold that he must.[2]

McCullough maintains that his failure to submit a grievance to the Inmate Grievance Commission did not require that his suit be dismissed. First, he argues that the Commission does not have jurisdiction over tort claims seeking damages for personal injuries. In the alternative, he contends that even if the Commission had jurisdiction, this case would fall within "exceptions" to the general rule that an administrative agency's jurisdiction must be invoked and exhausted before resorting to the courts. These exceptions, according to McCullough, are (1) when the Legislature has indicated an intention that the agency's jurisdiction not be primary and that an independent judicial remedy may be pursued without resort to the administrative remedy, (2) where " 'the administrative agency cannot provide to any substantial degree a remedy,' " and (3) when the object and issues of the " 'judicial proceeding only tangentially or incidentally concern matters which the administrative agency was legislatively created to solve, and do not, in any meaningful way, call for or involve applications of its expertise.' " (Appellant's brief pp. 9–10, quoting from *Prince George's Co. v. Blumberg*, 288 Md. 275, 284–285, 418 A.2d

---

2. In his complaint and throughout the case, including his brief and oral argument in this Court, McCullough has claimed no violation of his federal or state constitutional rights. His action is entirely a non-constitutional tort suit for assault and battery. Consequently, our holding in this case is limited to the situation where an inmate, in the custody of the Commissioner of Corrections, or at the Patuxent Institution, is bringing a non-constitutional common law tort action for damages based upon alleged tortious conduct by officials or employees of the Division of Correction or the Patuxent Institution. We intimate no opinion with respect to actions based on violations of federal or state constitutional rights. In this connection, *see* 42 U.S.C. § 1997e; *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 12–15, 511 A.2d 1079 (1986); *Widgeon v. Eastern Shore Hosp. Center*, 300 Md. 520, 479 A.2d 921 (1984).

1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981)).[3]

Although couched as two alternative arguments, with the second argument based on asserted exceptions to the general principle concerning the need for invocation and exhaustion of administrative remedies, McCullough's arguments all come down to a single contention. The contention is that, under the Inmate Grievance Commission statute, the Commission lacks authority to award money damages. Because of this alleged lack of statutory authority to make a monetary award, McCullough maintains that the Commission had no jurisdiction over his claim. His alternate argument that, even if the Commission had jurisdiction, he need not invoke and exhaust the administrative remedy, is also based on the Commission's alleged lack of statutory power to make a monetary award. Thus, because of this claimed lack of authority to award damages, McCullough asserts that the General Assembly did not intend that an inmate in his position be required to invoke and exhaust the administrative remedy. In light of this same asserted absence of statutory authority, he argues that the administrative remedy is inadequate and cannot to any substantial degree provide a remedy. McCullough's premise, that the Inmate Grievance Commission does not have authority to make a monetary award, is largely based on an early opinion of the Attorney General (60 Op.Atty.Gen. 360 (1975)). *See also McCray v. Burrell,* 367 F.Supp. 1191 (D.Md.1973), *rev'd on other grounds,* 516 F.2d 357 (4th Cir.1975), *cert. dismissed,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976).

---

**3.** While the first and the third of these so-called exceptions are listed separately, in both the appellant's brief and the *Blumberg* case (being the first and fifth exceptions listed in *Blumberg* ), they are essentially the same thing, namely where, as a matter of legislative intent, the agency's jurisdiction is not primary. *See Md.–Nat'l Cap. P. & P. Comm'n v. Crawford, supra,* 307 Md. at 22–30, 511 A.2d at 1090–1094; *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 785–786, 506 A.2d 625 (1986); *Wash. Sub. San. Comm'n v. Mitchell & Best,* 303 Md. 544, 561–562, 495 A.2d 30, 39 (1985); *Md.–Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 601, 386 A.2d 1216, 1225–1226 (1978).

There are two answers to McCullough's position, either one of which is dispositive. First, even if the Commission did lack statutory authority to make a monetary award, McCullough would be required to invoke and exhaust his administrative remedy prior to pursuing his tort action. Second, the Commission does have authority to make a monetary award as long as funds are appropriated or otherwise lawfully available for this purpose.

(1)

■ It is a settled principle of administrative law that an agency's lack of power to grant the particular type of relief sought does not necessarily mean that the agency lacks jurisdiction over a matter or that the administrative remedy need not be invoked and exhausted. As Professor Davis has pointed out, "[t]hat the agency has no power to grant the relief sought is not a reason for refusing to require prior resort to the agency, if the case involves a question within the agency's special competence." 3 Davis, *Administrative Law Treatise,* § 19.07 (1958). *See also Gingell v. County Commissioners,* 249 Md. 374, 376, 239 A.2d 903 (1968). With regard to a monetary award, the Supreme Court, for example, in *Thompson v. Texas Mexican Railway,* 328 U.S. 134, 151, 66 S.Ct. 937, 947, 90 L.Ed. 1132 (1946), held that a railroad, seeking contractual damages, was required to bring a proceeding before the Interstate Commerce Commission even though the ICC did not have the authority to award money damages.

■ If it be assumed arguendo that the Inmate Grievance Commission does not have the statutory authority to make a monetary award, and can only issue directives and orders of an equitable nature as contended for by McCullough, nevertheless, under the circumstances here, McCullough was required to invoke and exhaust the administrative remedy before the Commission before he was entitled to an adjudication of his tort suit.

It is undisputed that an inmate's complaint, based on an attack by a correctional officer in the inmate's cell, falls

within the Inmate Grievance Commission's jurisdiction as long as the inmate seeks a remedy other than money damages. In substance, McCullough's argument is not that the nature of his complaint is outside of the Commission's jurisdiction; it is that the remedy sought is beyond the Commission's power. Furthermore, this Court has recognized that an inmate's complaint against correctional officers, based on an assault in an institution, falls within the Inmate Grievance Commission statute. *Holsey v. Inmate Griev. Comm'n, supra,* 296 Md. at 603, 464 A.2d at 1019.

In light of the nature of McCullough's complaint, the necessity for invocation and exhaustion of administrative remedies could not have been more forcefully expressed in the statute. The General Assembly mandated that "[n]o court shall entertain an inmate's grievance or complaint within the jurisdiction of the Inmate Grievance Commission unless and until" the inmate has invoked and exhausted his remedies before the Commission. Art. 41, § 4–102.1(*l*). This sweeping language, delineating the need to invoke and exhaust the administrative remedy, is totally inconsistent with the notion that the Commission's jurisdiction over inmate grievances can be circumvented by the simple expedient of making a claim for money damages.

Moreover, in *Collins v. Foster, supra,* 302 Md. 328, 487 A.2d 1189, we decided that an inmate in a Maryland correctional institution, seeking money damages from a correctional official based on incidents in the institution, was required to exhaust his remedy before the Inmate Grievance Commission. In that case, an inmate at the Maryland Penitentiary filed an action in the District Court of Maryland against the Warden of the Penitentiary, seeking damages for the Warden's failure to provide the plaintiff with adequate dental care.[4] The plaintiff had filed a claim with

---

**4.** While this Court's opinion in *Collins v. Foster* does not set out in detail the nature of the relief sought by the inmate, the record extract before the Court in that case discloses that the inmate sought $5,000 damages. The District Court of Maryland, of course, generally has no

the Inmate Grievance Commission but had failed to exhaust his remedy before the Commission. The District Court refused to consider the merits of the plaintiff's action because of his failure to exhaust his administrative remedies. The circuit court reversed on a procedural ground. This Court, disagreeing with the circuit court on the procedural ground, reversed the circuit court's decision. In addition, we specifically upheld the District Court's refusal to decide the merits of the action because of the plaintiff's failure to exhaust his remedy before the Inmate Grievance Commission, 302 Md. at 333, 487 A.2d at 1191.

A complaint alleging an assault of a prison inmate, in his cell, by a correctional officer, is obviously a matter falling within the expertise of the Inmate Grievance Commission. It is one of the types of inmate grievances or complaints for which the Commission was created. Consequently, regardless of whether the Inmate Grievance Commission has the statutory authority to award money damages, the plaintiff McCullough was required to invoke and exhaust his remedy before the Commission.

### (2)

Alternatively, we disagree with McCullough's basic premise that the statutory provisions establishing the Inmate Grievance Commission preclude the Commission and the Secretary of Public Safety and Correctional Services from making monetary awards. In our view, the Commission and Secretary have statutory authority to award monetary damages as long as funds are appropriated or otherwise properly available for this purpose.

The language of the Inmate Grievance Commission statute itself contradicts McCullough's contention that the Commission and Secretary have only limited remedial authority. Art. 41, § 4–102.1(d), authorizes the Commission to enter-

---

equitable jurisdiction and, with a few exceptions, can grant no form of relief other than money damages. *See* Code (1974, 1984 Repl.Vol.), § 4–402(a) of the Courts and Judicial Proceedings Article.

tain *"any* grievance or complaint against any officials or employees of the Division of Correction or the Patuxent Institution." (Emphasis added). The words "any grievance or complaint" would seem to encompass one requesting a monetary award. Many types of grievances, depending on the circumstances, cannot be rectified by a directive or order of an equitable nature; the only practical relief may be a monetary award.

Moreover, there is no language in the statute which, even arguably, limits the remedial authority of the Commission and the Secretary of Public Safety and Correctional Services. Where the Commission finds that a complaint is meritorious, the Secretary is empowered to put the Commission's order into effect or to "take whatever action he deems appropriate in light of the Commission's findings." The General Assembly obviously intended that the Secretary have broad discretionary remedial authority.

This Court's opinions relating to the Inmate Grievance Commission indicate that the administrative remedy before the Commission is both comprehensive and "flexible." *Holsey v. Inmate Griev. Comm'n, supra; State v. McCray, supra,* 267 Md. at 141–144, 297 A.2d at 281–282. As previously pointed out, we have held that an inmate must exhaust his Commission remedy in a case where the only relief sought was money damages. *Collins v. Foster, supra.* Nothing in these cases remotely suggests that the remedial authority of the Commission and Secretary is limited to orders of an equitable nature.

In addition, the Commission and the Secretary of Public Safety and Correctional Services, soon after the enactment of the Inmate Grievance Commission statute, took the position that orders for the payment of money to inmates were authorized, and several monetary awards were made. *See* COMAR Title 12, § .07.01.04G(1); Comment, *Maryland Inmate Grievance Commission, supra,* 35 Md.L.Rev. at 481 (citing some of the administrative cases in which monetary

awards were made).[5] The interpretation of a statute by those officials charged with administering the statute is, of course, entitled to weight. *See, e.g., Sinai Hosp. v. Dep't of Employment,* 309 Md. 28, 46, 522 A.2d 382 (1987); *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307 (1986); *Consumer Protection v. Consumer Pub.,* 304 Md. 731, 759, 501 A.2d 48 (1985).

As mentioned earlier, in arguing that monetary awards are precluded under the Inmate Grievance Commission statute, McCullough chiefly relies on a 1975 opinion of the Attorney General, 60 Op.Atty.Gen. 360. The position of the Attorney General, however, has changed since that opinion. In oral argument before us in the present case, the Attorney General's Office took the view that the Commission and Secretary do have the statutory authority to make monetary awards as long as funds are available for this purpose. Moreover, the 1975 Attorney General's opinion was based upon cases dealing with the question of whether the State had waived sovereign immunity for various types of suits *in court* against the State. These cases have little relevance to the construction of a legislative enactment specifically authorizing the filing of certain types of complaints and creating an *administrative* machinery for adjudicating those complaints.

Therefore, in our view, the Inmate Grievance Commission and the Secretary are authorized to make monetary awards so long as funds are appropriated or are otherwise properly available for this purpose, and the Secretary in his discretion determines that such an award is appropriate.

(3)

Although the circuit court in this case correctly held that McCullough was required to invoke and exhaust his

---

5. The awards were for property damage and not personal injury. Nevertheless, nothing in the statute would support a distinction between the authority to award money damages for injury or loss to property and the authority to award money damages for injury to the person.

remedy before the Inmate Grievance Commission before receiving an adjudication on the merits of his tort action, we do not believe that a dismissal of the tort action was the preferable order. Under circumstances like these, where a plaintiff has both an administrative remedy and an independent judicial action, and the administrative agency's jurisdiction is deemed primary, it is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction over the independent judicial action pending invocation and exhaustion of the administrative procedures. *See Md.–Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 18, 511 A.2d 1079, 1087 (1986); *Bd. of Ed. for Dorchester Co. v. Hubbard*, 305 Md. 774, 792–793, 506 A.2d 625, 634 (1986).

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED, AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLANT TO PAY COSTS.

MURPHY, C.J., filed a concurring opinion in which COLE and McAULIFFE, JJ., joined.

MURPHY, Chief Judge.

I agree with the Court that a Maryland prison inmate, who claims that a correctional officer assaulted and thereby injured him, must first file a grievance or complaint with the Commission, and exhaust his administrative remedies before that body, before he may seek monetary damages for personal injuries in a common law tort action in court. I also agree with the Court that this requirement is one imposed by the inmate grievance statute (Art. 41, § 4–102.1) and must be followed even if the Commission does not have statutory authority to make a monetary damage award to the inmate for his personal injuries. Most emphatically, however, I disagree with the Court's alternate and wholly unnecessary conclusion that the Commission, in disposing of an inmate's grievance or complaint, has statutory authority to award personal injury damages to the inmate if funds are

available for this purpose. I think the Court badly misconstrues the legislative intent when it concludes that the words "any grievance or complaint" in the statute vest authority in the Commission to make such a monetary personal injury damage award. Because I would limit the holding in this case to the first ground set forth in Part (1) of the Court's opinion, I concur only in the judgment.

Contrary to the view taken by the Court, both the inmate and Wittner, who is represented by the Attorney General, recognize that the statute does not empower the Commission to make monetary damage awards for personal injuries sustained by an inmate as a result of a correctional officer's tortious or intentional misconduct. In his brief, the Attorney General recognizes that all inmates have a right to be free from physical abuse at the hands of correctional officers. If and when it occurs, he says that it will not "be allowed to continue unabated and unpunished" because the Commission "may order any action that is appropriate to prevent a recurrence of such an incident, including disciplining or discharging the officer responsible and ordering any changes in the institution's internal procedures and administrative practices that may be needed." The Attorney General concludes that such actions provide a direct and meaningful remedy for an inmate who might otherwise be vulnerable to repeated abuse.

The position taken by the Attorney General comports with the history underlying enactment of the statute in 1971. As we said in *State v. McCray*, 267 Md. 111, 297 A.2d 265 (1972), the impetus for the statute creating the Commission grew out of a 1970 speech to the National Association of Attorneys General by Chief Justice Burger who advocated "a simple and workable procedure by which every person in confinement who has, or who thinks he has, a grievance or complaint can be heard promptly, fairly and fully," 267 Md. at 142, 297 A.2d 265. We said in *McCray*, at 144, 297 A.2d 265, that the statute and implementing rules adopted by the Commission provided that simple and workable procedure.

That the statute does not empower the Commission, or the Secretary, to assess or award damages to an inmate for personal injuries was the flat holding in *McCray v. Burrell,* 367 F.Supp. 1191, 1208 (D.Md.1973) *rev'd on other grounds,* 516 F.2d 357 (4th Cir., 1975). Consistent with this case is *Washington v. Boslow,* 375 F.Supp. 1298, 1300 (D.Md.1974) where the court recognized that the relief available from the Commission, "although not exactly comparable to an award of damages, is critical to the welfare of the inmate, to the proper administration of the correctional institution, and to the expeditious resolution of the inmate's grievance." The substance of these holdings is reflected and has been adopted in several opinions of the Maryland Attorney General. *See* 59 Op.Att'y Gen. 438 (1974); 60 Op.Att'y Gen. 360 (1975). These opinions are not limited, as the Court suggests, to considerations of sovereign immunity against civil suits for monetary damages, but were predicated on the broader premise that the statute did not authorize the Commission to pay money to a grieving inmate for tort-type personal injury damages. *See also McCargo v. Mister,* 462 F.Supp. 813 (D.Md.1978); Comment, 35 Md.L.Rev. 458 (1978) (stating at 481 that "the Commission has never awarded damages for personal injury, pain and suffering, emotional distress, or other damage theories not included in the notion of 'property cases' "); and letter of the Executive Director of the Commission, dated April 2, 1987, to the Legal Aid Bureau, which is part of the record before us, stating that while there had been grievances involving claims of excessive force by correctional employees, none included monetary compensation as part of the relief as the Commission "does not have the authority to award compensatory or punitive damages" in such cases.

As the Court points out, § 4–102.1(k) of the statute authorizes the Commission, subject to the Secretary's approval, "to adopt rules and regulations *for the conduct of its proceedings* " (emphasis added). Manifestly, this authority is purely procedural; it does not permit the Commission to add to or broaden its statutory powers by enacting substan-

tive rules. Nevertheless, presumably acting under this rule-making provision, the Commission may, in disposing of a grievance, pay the fair market value of, or replace, property of an inmate which has been lost, stolen, damaged, destroyed or improperly confiscated through the negligence or other wrongful act or omission of a correctional officer. *See* COMAR, Title 12, § 12.07.01.04. There is no similar purported authorization for money awards for personal injuries suffered by inmates. In any event, the difference between the two types of monetary awards is a most substantial one. In the property context, the amount of the loss is limited to fair market value—an easily ascertainable standard, one which is both "simple and workable." The contrary is true in the personal injury context. There is nothing simple about a grievance proceeding which permits an administrative agency to hear evidence of the nature and extent of an inmate's personal injury and to consider the full range of tort-type damages to compensate for the injury. I cannot conceive that the Legislature intended that the Commission act as a separate forum for the collection of personal injury damages, presumably after hearing from expert medical witnesses on both sides as to the nature and extent of the injury. To vest such extraordinary and indeed unbridled authority in the Commission is quite at odds with the statutory purpose. The Commission, as an administrative agency created by statute, has no inherent powers; its authority cannot reach beyond the warrant provided for it by the statute. *See Holy Cross Hosp. v. Health Services,* 283 Md. 677, 393 A.2d 181 (1978). See also *Gutwein v. Easton Publishing Co.,* 272 Md. 563, 575–77, 325 A.2d 740 (1974) (holding that the statute creating the Maryland Human Relations Commission did not grant the Commission power to make monetary awards for compensatory or other damages, particularly in the absence of any statutory guidelines or limitations).

It is no answer to say, as the Court does, that the Commission's power to award personal injury damages is subject to the availability of appropriations for this purpose.

Of course, the General Assembly may not, in enacting the Budget Bill, amend the inmate grievance statute by "legislating" an addition to the Commission's statutory power through the provision of a budgetary appropriation. No principle is better settled than that the Legislature may not enact legislation in the Budget Bill, which is not subject to gubernatorial veto. And, finally, I think the Court has failed to give due consideration to the well-recognized rule that the consistent view taken of a statute by administrative officers charged with its enforcement should be afforded persuasive influence in determining the proper judicial construction when, as here, the clear import of the statute supports the administrative construction that the Commission is not empowered to grant monetary awards for personal injuries. *See Holy Cross, supra,* 283 Md. at 685, 393 A.2d 181.

I, therefore, limit my concurrence in the Court's judgment to Parts (1) and (3) of the opinion.

Judge COLE and Judge McAULIFFE have authorized me to state that they concur with the views expressed herein.